IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COURTNEY D. TALLEY,

      Plaintiff,

v.                                                       Civil Action No. 3:24cv391

VIRGINIA COMMONWEALTH
UNIVERSITY,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Virginia Commonwealth University's ("VCU") Motion to Dismiss (the "Motion").[1] (ECF No. 8.) Plaintiff Courtney D. Talley responded in opposition to the Motion, (ECF No. 11), and VCU replied, (ECF No. 12).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant the Motion. (ECF No. 8.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

A.  **Factual Allegations**[2]

Ms. Talley is "an alumna of Virginia Commonwealth University" "who was enrolled in the ROTC[3] program in collaboration with the University of Richmond." (ECF No. 7, at 1.) Ms. Talley avers that throughout her time in the ROTC, she "demonstrated full commitment to the program." (ECF No. 7, at 2.)

"During her final semester," Ms. Talley "experienced a lack of support from leadership, particularly from Major Mark Axtell", who "engaged in unfair and unjust treatment, including falsifying documents, discriminating against [Ms. Talley] based on her sexual orientation and gender identity, and exhibiting biased actions in the commissioning process." (ECF No. 7, at 2.) Major Axtell "accused [Ms. Talley] of plagiarism," which Ms. Talley "admitted and apologized for[.]" (ECF No. 7, at 2.) Despite Ms. Talley's "efforts to address the issue, Major Axtell retracted previously submitted paperwork and opted for disenrollment without proper counseling", and "altered grading policies and administered biased final exams, affecting [Ms. Talley's] overall grade." (ECF No. 7, at 2.) "Despite potential alternatives, such as counseling and a probationary period, Major Axtell opted for disenrollment and presented misleading paperwork to [Ms. Talley], forcing her to sign documents under false pretenses." (ECF No. 7, at 3.)

---

[2] In considering the Motion to Dismiss, (ECF No. 8), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Ms. Talley. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[3] ROTC stands for Reserve Officers' Training Corps.

2

Ms. Talley asserts that "Major Axtell's treatment of [her] was influenced by discriminatory biases." (ECF No. 7, at 2.) "After [Ms. Talley] disclosed her identity as an African American female who identifies as gay, Major Axtell's demeanor became hostile, and he suggested psychiatric evaluation, which [Ms. Talley] had to pay for out-of-pocket." (ECF No. 7, at 2.) Ms. Talley asserts that Major Axtell made this suggestion "despite the doctor clearing [Ms. Talley] of any issues." (ECF No. 7, at 2.)

Further, Major Axtell "disproportionately favor[ed] non-African American cadets for commissioning" and "mishandl[ed] disciplinary issues involving other cadets." (ECF No. 7, at 2.) Ms. Talley asserts that "cadets with known infractions, such as drug use and DUI[s], were allowed to commission" but Ms. Talley "was unjustly denied this opportunity for an Army Commission." (ECF No. 7, at 2–3.) "Other African American female cadets, such as Cadet Gabriell Boahemaah, faced similar discriminatory treatment from Major Axtell and Captain Ian Ramsey." (ECF No. 7, at 3.) Ms. Talley alleges that "[t]hese instances demonstrate a pattern and practice of racial bias and unfair treatment within the ROTC program under the direction of Major Axtell." (ECF No. 7, at 3.)

Ms. Talley further alleges that "[d]espite alternatives, such as counseling and a probationary period, Major Axtell opted for disenrollment and presented misleading paperwork to [her], forcing her to sign documents under false pretenses." (ECF No. 7, at 3.) She asserts "[t]his approach disregarded [her] well-being and the challenging circumstances she faced." (ECF No. 7, at 3.)

B. **Procedural Background**

On May 29, 2024, Ms. Talley filed her original Complaint. (ECF No. 1.) In its September 5, 2024 Order, this Court found that the Complaint "offende[d] Federal Rule of Civil

3

Procedure 8" and ordered Ms. Talley to file an Amended Complaint "no later than September 23, 2024." (ECF No. 6, at 1.) On September 20, 2024, Ms. Talley filed an Amended Complaint. (ECF No. 7.)

The Court ordered that the Amended Complaint comply with the following directions:

1. At the very top of the amended pleading, Ms. Talley must place the following caption in all capital letters: "AMENDED COMPLAINT FOR CIVIL ACTION NUMBER: 3:24cv391."

2. The first paragraph of the particularized amended complaint must contain a list of defendant(s). Thereafter, in the body of the particularized amended complaint, Ms. Talley must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to her claims for relief. Thereafter, in separately captioned sections, Ms. Talley must clearly identify each federal or state law allegedly violated. Under each section, Ms. Talley must list each defendant purportedly liable under that legal theory and explain why she believes each defendant is liable to her. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized amended complaint that support that assertion.

3. Ms. Talley shall also include the relief she requests - what in the law is called a "prayer for relief."

4. The particularized amended complaint must stand or fall on its own accord. Ms. Talley may not reference statements in the prior complaint.

5. The particularized amended complaint must omit any unnecessary incorporation of factual allegations for particular claims and any claim against any defendant that is not well-grounded in the law and fact. *See Sewraz v. Guice*, No. 3:08cv35 (RLW), 2008 WL 3926443, at *2 (E.D. Va. Aug. 26, 2008).

(ECF No. 6, at 2.) The Court advised Ms. Talley that "the failure to strictly comply with the Court's directives and with applicable rules will result in DISMISSAL OF THIS ACTION WITHOUT PREJUDICE[.]" (ECF No. 6, at 2 (emphasis in original).)

In her Amended Complaint, Ms. Talley asserts three counts:

**Count I:**    Discrimination and Unfair Treatment pursuant to the Equal Protection Clause of the Fourteenth Amendment

4

>  **Count II:** Violation of Procedural Due Process pursuant to the Fourteenth Amendment
>
>  **Count III:** Breach of Duty of Care

(ECF No. 7, at 3.) On October 3, 2024, VCU filed the instant Motion to Dismiss, arguing that dismissal is proper under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 8.) Ms. Talley responded, (ECF No. 11), and VCU replied, (ECF No. 12).

On May 20, 2025, the Court entered a Notice of the Clerk's Intention to Proceed with Abatement (the "Notice"). (ECF No. 13.) The Notice pertained to a separate (and former) defendant—the Department of the Army—and stated: "Court records show that the complaint in this action was filed on May 29, 2024, and that the defendant, Department of the Army, United States of America, has not been served with process." (ECF No. 13, at 1.) The Notice advised Ms. Talley "of the Clerk's intention to dismiss this case without prejudice as to the unserved defendant" 15 days from the date of the Order "unless the plaintiff can show the Court good cause why such service was not made." (ECF No. 13, at 1.) Ms. Talley did not respond. On June 11, 2025, the Court entered an Order of Abatement dismissing the case as to the Department of the Army, United States of America. (ECF No. 14, at 1.)

For the reasons articulated below, the Court will grant the Motion to Dismiss. (ECF No. 8.)

## II. Standard of Review

### A. Motion to Dismiss Under Rule 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a plaintiff's complaint for lack of subject matter

jurisdiction. Fed. R. Civ. P. 12(b)(1). "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018). "A court's determination of subject matter jurisdiction addresses whether the court has the authority to entertain a particular kind of case, not whether a claim for relief is viable under a particular construction of a statute." *Id.* at 645–46.

A motion to dismiss brought pursuant to Rule 12(b)(1) may challenge the existence of subject matter jurisdiction in two ways. *Kerns. v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n v. Va. Intern. Terminals, Inc.*, 914 F.Supp. 1335, 1338 (E.D. Va. 1996 (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F.Supp. at 1338.

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. When a litigant raises a Rule 12(b)(1) motion to challenge "the factual basis for subject matter jurisdiction," the petitioner bears "the burden of proving subject matter jurisdiction." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court may weigh evidence to determine the existence of

jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338.; *see also Adams*, 697 F.2d at 1219.

In sum, when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. *Kerns*, 585 F.3d at 193. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. *Id.* "And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns*, 585 F.3d at 193; *see also Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 368 F. Supp. 3d 889, 893 (E.D. Va. 2019) ("When such a factual challenge is made to jurisdiction, the jurisdictional facts must be determined with the same procedural safeguards as afforded through a motion for summary judgment").

B.    <u>Motion to Dismiss Under Rule 12(b)(6)</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

7

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

Because Ms. Talley proceeds *pro se*, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). "This principle of liberal construction, however, has its limits." *Suggs v. M&T Bank*, 230 F.Supp.3d 458, 461 (E.D. Va. 2017), *aff'd sub nom. Suggs v. M&T Bank*, 694 F. App'x 180 (4th Cir. 2017). A pro se plaintiff must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F.Supp.2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Ct. of Hampton*, No. 3:14cv372 (HEH), 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### III. Analysis

As noted above, the Department of the Army, United States of America was dismissed from this suit pursuant to the June 11, 2025 Order of Abatement. (ECF No. 14, at 1.) Major Mark Axtell and University of Richmond Spider Battalion, originally named Defendants, were crossed out and initialed by Ms. Talley in the Amended Complaint. (ECF No. 7, at 1.) Thus, the only remaining Defendant is the Virginia Commonwealth University ("VCU").[4]

Notably, nowhere in the Amended Complaint does Ms. Talley levy specific allegations against VCU. *See D.W. by and through Williams v. Chesterfield Cnty. Schs.*, No. 3:17cv679 (RCY), 2018 WL 3098121, at *8 n.8 (E.D. Va. June 5, 2018) (finding that a defendant against

---

[4] The Amended Complaint names Virginia Commonwealth University ROTC Program as the sole remaining Defendant. (ECF No. 7, at 1.) In its Motion to Dismiss, VCU represents that "Virginia Commonwealth University ROTC [P]rogram is not a legal entity subject to suit in the Commonwealth of Virginia." (ECF No. 9, at 6 n.3.) In light of this Court's obligation to liberally construe *pro se* filings, and because Plaintiff mailed a copy of the Amended Complaint to VCU's Office of University Counsel and VCU filed a Motion to Dismiss in this case, the Court will construe the Amended Complaint's reference to "Virginia Commonwealth University ROTC Program" as referencing Defendant VCU.

9

whom a *pro se* plaintiff levied no specific allegations constituted an improper party), *report and recommendation adopted*, No. 3:17cv679 (MHL), 2018 WL 3097017 (E.D. Va. June 22, 2018).

Counts I and II broadly refer to "Defendants' actions" and "Defendants' failure", (ECF No. 7, at 3), and VCU states that "[t]he first two [counts] appear to include VCU as a Defendant."[5] (ECF No. 9, at 6.) However, nowhere in the Amended Complaint's factual allegations does Ms. Talley reference VCU or any agent or employee of VCU. (*See* ECF No. 7, at 2–3.) Rather, the allegations almost exclusively refer to actions taken by "Major Mark Axtell", whom the Amended Complaint calls a "Professor of Military Science, University of Richmond Spider Battalion."[6] ECF No. 7, at 2–3.) Ms. Talley does not allege that Major Axtell is legally connected to Defendant in any way, only stating in a vague and conclusory fashion that "discriminatory treatment from Major Axtell and Captain Ian Ramsey . . . demonstrate[d] a pattern and practice of racial bias and unfair treatment within the ROTC program under the direction of Major Axtell." (ECF No. 7, at 3.)  VCU contends that "Plaintiff does not (nor can she) claim that Major Axtell was an employee of VCU", which is "fatal to her claim of discrimination." (ECF No. 9, at 6.)

Thus, Ms. Talley failed to comply with this Court's clear instructions set forth in its September 5, 2024 Order, which required Ms. Talley to "list each defendant purportedly liable . . . and explain why she believes each defendant is liable to her." (ECF No. 6, at 2.) Pursuant to Federal Rule 41(b), the Court may dismiss an action when a plaintiff fails to comply with a court

---

[5] In contrast, in Count III, titled "Breach of Duty of Care", Ms. Talley asserts that "Major Axtell and the University of Richmond Spider Battalion breached their duty of care by engaging in discriminatory practices and failing to provide a fair and impartial evaluation process." (ECF No. 7, at 3.) Neither Major Axtell nor the University of Richmond Spider Battalion are defendants in this case.

[6] The Amended Complaint also alleges "discriminatory treatment from . . . Captain Ian Ramsey", who is not a defendant in this case. (ECF No. 7, at 3.)

order. *See* Fed. R. Civ. P. 41(b); *Zaczek v. Fauquier Cnty.*, 764 F. Supp. 1071, 1075 n.16 (E.D. Va. 1991) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)) (explaining that a court may "act on its own initiative" with respect to dismissal under Federal Rule 41(b)). Further, to survive a Motion to Dismiss, Plaintiffs must plead facts supporting a reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Ms. Talley has not done so.

Accordingly, the Court will grant Defendant's Motion to Dismiss. (ECF No. 8.) The Court will dismiss without prejudice Ms. Talley's Amended Complaint. (ECF No. 7.)

An appropriate Order shall issue.

Date: 7/1/25
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge